UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| T.N., | Case No.  20-cv-07518-VKD |
| Plaintiff, | |
| v. | **ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| KILOLO KIJAKAZI, | Re: Dkt. Nos. 23, 27 |
| Defendant. | |

Plaintiff T.N.[1] appeals a final decision of the Commissioner of Social Security

("Commissioner")[2] denying her application for disability insurance benefits under Title II of the

Social Security Act ("Act"), 42 U.S.C. § 423 *et seq*., on remand following a September 19, 2018

order entered by the Honorable Susan Illston.  *See* AR 590-619 (*Norman v. Berryhill*, No. 17-cv-

04108-SI, 2018 WL 4519952 (N.D. Cal. Sept. 19, 2018)).

The parties have filed cross-motions for summary judgment.  The matter was submitted

without oral argument.  Upon consideration of the moving and responding papers and the relevant

evidence of record, for the reasons set forth below, the Court grants T.N.'s motion for summary

judgment, denies the Commissioner's cross-motion for summary judgment, and remands this

matter for an immediate calculation and award of benefits.[3]

---

[1] Because orders of the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by her initials.  This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

[2] Pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as defendant in place of Andrew Saul.

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 8,10.

I.     BACKGROUND

A.     Pre-Remand Proceedings Before ALJ Laverdure

T.N. filed her application for disability insurance benefits on August 6, 2013, when she was forty-five years-old, alleging that she had been disabled since January 1, 2009 due to depression.  AR[4] 51.  T.N.'s application was denied initially and on reconsideration.  AR 61, 72. The first ALJ hearing was held on November 18, 2015, after which ALJ Richard P. Laverdure issued an unfavorable decision on December 11, 2015.  AR 33-49, 560-69.

The Appeals Council denied T.N.'s request for review of the ALJ's decision.  AR 1-6. T.N. subsequently sought judicial review of the decision denying her application for benefits, and that appeal was assigned to Judge Illston.  AR 590-619.  On September 19, 2018, Judge Illston granted in part and denied in part T.N.'s motion for summary judgment, reversing and remanding for further proceedings.  AR 619.

B.     Judge Illston's September 19, 2018 Order

Judge Illston's September 19, 2018 order details T.N.'s work and medical history and the evidence in this case as of the date of that order, which this Court adopts and incorporates herein. AR 590- 619.  Judge Illston ordered the ALJ to do the following on remand:

[1] **Reweigh the credibility of plaintiff's symptom testimony.**  If the ALJ rejects any portions of plaintiff's symptom testimony, the ALJ shall identify what testimony the ALJ finds not credible and provide specific, clear and convincing reasons supported by substantial evidence in the record for rejecting that testimony.

[2] **Reweigh the medical opinions, in particular those of Dr. Sangani, Ms. Coulter, Dr. Spivey, and Drs. Koretzky and Covey.**  If the ALJ finds that Dr. Sangani's opinion is not controlling, the ALJ shall weigh the opinion by applying the factors listed in 20 C.F.R. § 404.1527(c)(2)-(6).  Any opinions of Dr. Sangani that the ALJ rejects must be specifically identified and rejected with specific and legitimate reasons supported by substantial evidence in the record.  Any opinions of Ms. Coulter that the ALJ rejects must be rejected with germane reasons.  The ALJ shall not exclude consideration of records solely because they post-date the Date Last Insured.

_____

[4] "AR" refers to the certified administrative record lodged with the Court.  Dkt. No. 17.

United States District Court
Northern District of California

[3] **Call a medical advisor regarding plaintiff's onset date.**

[4] **Revisit the five-step inquiry, starting with step three.**  If the ALJ finds plaintiff is not disabled at step three, then the ALJ shall proceed to reevaluate plaintiff's RFC and shall revisit step five.

AR 618 (emphasis in original).

### C.      Post-Remand Proceedings Before ALJ Hernandez

On remand, ALJ Evangelina Hernandez held a telephonic hearing on July 1, 2020.  AR 516-556.  ALJ Hernandez issued a second unfavorable decision on August 27, 2020.  AR 495-507.

ALJ Hernandez found that T.N. met the insured status requirements of the Act on December 31, 2014, and that she did not engage in substantial gainful activity since her amended onset date of October 1, 2012.[5]  AR 498.  The ALJ further found that T.N. has the following severe impairments: major depressive disorder, anxiety, post-traumatic stress disorder (PTSD), and obesity.  AR 498.  However, ALJ Hernandez concluded that T.N. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Commissioner's regulations.  AR 498.

ALJ Hernandez determined that T.N. has the RFC to perform a full range of work at all exertional levels but added several non-exertional limitations.  AR 500.  First, the ALJ found that T.N. needed to avoid "concentrated use of hazardous machinery" and "concentrated exposure to unprotected heights."  AR 500.  T.N. must be limited to "simple," "routine and repetitive tasks," and she must work "in a 'low stress job,'" defined as "having only occasional decision making required, only occasional changes in work setting, only occasional interaction with the general public, and only occasional interaction with coworkers, although work can be around coworkers

_____

[5] Contrary to Judge Illston's order, ALJ Hernandez declined to call an additional medical expert to determine T.N.'s onset date on remand, instead accepting T.N.'s amended onset date of October 1, 2012.  AR 495-96; *see also* AR 221 (originally alleging a January 1, 2009 onset date); AR 520 (ALJ accepts T.N.'s amended onset date on the record at the July 1, 2020 hearing, which T.N. amended to "expedite the decision in this case.").  In accepting the amended onset date, ALJ Hernandez concluded that it was unnecessary to call an additional consultative examiner because the ALJ could instead rely on the prior October 23, 2013 opinion from state agency consultative psychological examiner, Dr. Patricia Spivey.  AR 495.  The ALJ reasoned that, given the amended onset date, Dr. Spivey's opinion regarding T.N.'s functioning fell "at approximately the halfway point between the amended alleged onset date and the date last insured, which is a critical point in time with respect to determining whether [T.N.'s] functioning rendered her disabled for [twelve] consecutive months prior to the date last insured."  AR 495-96.

United States District Court
Northern District of California

throughout the day."  AR 500.  The ALJ found that T.N. was unable to perform her past relevant work as a customer service representative but that she was able to perform other jobs existing in significant numbers in the national economy, including laundry worker, hospital cleaner, and scrap sorter.  AR 507.  Accordingly, ALJ Hernandez concluded that T.N. was not disabled, as defined by the Act, from T.N.'s amended onset date of October 1, 2012 through December 31, 2014, the date last insured.  AR 507.

T.N. then filed this second case seeking judicial review of the decision denying her application for benefits.[6]

## II.   LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits.  The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citation omitted); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citation omitted).  In this context, the term "substantial evidence" means "more than a mere scintilla" but "less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) and *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012), *superseded by*

---

[6] It appears that the Appeals Council did not review ALJ Hernandez's August 27, 2020 decision. There is nothing in the record from the Appeals Council, and the Commissioner's brief suggests that T.N. initiated this action following the ALJ's decision.  *See* Dkt. No. 25 at 3.  Instead, following Judge Illston's order, the Appeals Council remanded the case to an ALJ to hold a hearing as permitted by the procedures outlined for remanded cases by 20 C.F.R. § 404.977(a). *See id.* (noting that "[t]he Appeals Council may remand a case to an administrative law judge so that he or she may hold a hearing and issue a decision or a recommended decision"); *see also* AR 581 (November 16, 2018 Appeals Council order remanding to ALJ).  ALJ Hernandez's decision on remand is the final decision of the Commissioner, as the Appeals Council did not subsequently assume jurisdiction.  *See* Richard C. Ruskell, Soc. Sec. Disab. Claims Handbook § 3:24, Court Remand Cases; Remand vs. Reversal (May 2022 Update) ("When a case is remanded by a federal court for further consideration and the Appeals Council remands the case to an administrative law judge, or an administrative appeals judge issues a decision pursuant to 20 C.F.R. §§ 404.983(c) and 416.1483(c), the decision of the administrative law judge or administrative appeals judge will become the final decision of the Commissioner after remand on the case unless the Appeals Council assumes jurisdiction of the case.").

1    *regulation on other grounds*); *see also Morgan*, 169 F.3d at 599 (citation omitted).  When

2    determining whether substantial evidence exists to support the Commissioner's decision, the Court

3    examines the administrative record as a whole, considering adverse as well as supporting

4    evidence.  *Ahearn*, 988 F.3d at 1115 (citation omitted); *Hammock v. Bowen*, 879 F.2d 498, 501

5    (9th Cir. 1989).  Where evidence exists to support more than one rational interpretation, the Court

6    must defer to the decision of the Commissioner.  *Ahearn*, 988 F.3d at 1115-16 (citation omitted);

7    *Morgan*, 169 F.3d at 599 (citation omitted).

8           Given the prior appeal before Judge Illston, the Court here views the issues on appeal

9    "through the lens of [the] law of the case" doctrine when appropriate.  *R.K.T. v. Kijakazi,* No. 20-

10   CV-03101-JCS, 2022 WL 976979, at *5 (N.D. Cal. Mar. 31, 2022) (citing *Hammond v. Berryhill,*

11   688 F. App'x 486 (9th Cir. 2017)); *see also Merritt v. Mackey*, 922 F.2d 1317, 1320-21 (9th Cir.

12   1991) (citations omitted) (law of the case doctrine is not applied when the evidence is

13   "substantially different" or the controlling law has changed).

## III.   DISCUSSION

15          T.N. raises four challenges to ALJ Hernandez's decision, all of which pertain to the

16   grounds on which Judge Illston remanded this case.[7]  First, T.N. contends that the ALJ did not

17   properly reweigh the medical opinions.  Second, T.N. argues that the ALJ erred in reweighing her

18   symptom testimony.  Third, T.N. contends the ALJ erred in her RFC analysis.  Fourth, T.N. argues

19   that the ALJ made several errors at step five.

20          The Court agrees that ALJ Hernandez erred in her assessment of the medical opinions, and

21   that the ALJ's RFC and step five determinations were likewise flawed.  Because the Court further

22   concludes that remand for an award of benefits is warranted on these bases, it declines to reach the

23   issue regarding T.N.'s symptom testimony.

### A.   ALJ's Treatment of Medical Opinions

25          The medical opinions as of the date of the November 2015 ALJ hearing are described in

26   detail in Judge Illston's prior order.  *See* AR 592-97.  In the first ALJ decision, ALJ Laverdure

---

[7] The Court has reordered its discussion of the issues presented by T.N.

United States District Court
Northern District of California

afforded "significant weight" to state agency consultative psychological examiner Dr. Patricia Spivey's RFC opinion; "some weight" to the opinions of state agency consulting psychologists Drs. Koretzky and Covey; "little weight" to therapist Cheri Coulter's opinion; and the ALJ ignored the opinion of treating psychiatrist Dr. Sangani. AR 566-67. Judge Illston subsequently held that the ALJ erred in evaluating the medical opinions.

Following remand, T.N. amended her alleged onset date from January 1, 2009, to October 1, 2012. AR 520. She also submitted additional medical records and opinions from May 27, 2015 through July 31, 2020. AR 891-1355. The post-remand medical evidence contained records from treating therapist Ms. Coulter, LCSW, and from treating psychiatrist Dr. Sangani—both of whom previously submitted records and opinions in conjunction with the pre-remand proceedings. AR 891-1346; *see also* AR 592-97, 609-14 (discussion of Ms. Coulter's and Dr. Sangani's medical records and opinions in Judge Illston's September 19, 2018 order). The post-remand medical evidence also included two new opinions from treating psychologists Drs. Vernita Marsh and Karen James; a letter from treating therapist Ann Matsumoto, LCSW;[8] and a letter from examining therapist Cynthia Wiseman-Kelly, LCSW. AR 1348-52 (Dr. Marsh's opinion); AR 1354-55 (Dr. James' opinion); AR 1353 (therapist Wiseman-Kelly's letter); AR 1347 (therapist Matsumoto's letter).

On remand, ALJ Hernandez reweighed the medical opinions and reached conclusions that were nearly identical conclusions to those of ALJ Laverdure. ALJ Hernandez gave "significant weight" to state examining psychologist Dr. Spivey's opinion; "substantial weight" to the opinions of the state agency consulting psychologists; and "little weight" to the opinions of treating therapist Ms. Coulter and treating psychiatrist Dr. Sangani. AR 504-05. As for the post-remand medical opinions, ALJ Hernandez also gave "little weight" to the opinions of treating psychologists Drs. James and Marsh. AR 505.

As a preliminary matter, the Court notes that all of the post-remand medical evidence and

---

[8] Therapist Matsumoto appears to have taken over for Ms. Coulter after Ms. Coulter left the position. *See* AR 1342 (Ms. Coulter's final January 16, 2018 session with T.N.); AR 1347 (Ms. Matsumoto's first session with T.N. was on January 22, 2018).

United States District Court
Northern District of California

United States District Court
Northern District of California

opinions contained in the administrative record are dated after T.N.'s "date last insured" ("DLI").

On remand, ALJ Hernandez considered T.N.'s medical evidence and opinions that post-dated her

DLI.  *See* AR 496 (noting that ALJ considered "the evidence from after the date last insured,"

including the newly submitted opinions).  Although a disability must exist before the DLI to

establish entitlement to benefits, Ninth Circuit law is clear that "medical evaluations made after

the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration

condition."  *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996); *accord Taylor v. Comm'r of Soc.*

*Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011).  Here, because T.N.'s post-DLI evidence

pertained to the same chronic conditions—depression, anxiety, and PTSD—that existed and were

documented prior to her DLI, ALJ Hernandez appropriately treated the post-DLI evidence as

relevant in assessing T.N.'s functional limitations and did not discount the evidence on that basis.[9]

*See Svaldi v. Berryhill*, 720 F. App'x 342, 343–44 (9th Cir. 2017) (where medical opinions "refer

back" to the same chronic condition and symptoms discussed in his physician's opinion "from

several years prior," the "fact that those opinions were issued significantly after [the plaintiff's]

DLI does not undercut the weight those opinions are due"); *see also* AR 612, 617 (Judge Illston

concluded that it was "error for the ALJ to entirely disregard treatment records post-dating the

[DLI]," and subsequently notes that "[T.N.]'s symptoms of depression, anxiety, and PTSD grew

worse over time.").

### 1.    Dr. Sangani

Judge Illston described treating psychiatrist Dr. Sangani's medical treatment records and

opinion as they existed through November 2015.  AR 596.

Judge Illston found that ALJ Laverdure erred in discounting the opinions of T.N.'s treating

psychiatrist Dr. Sangani and her therapist, Ms. Coulter.  AR 610-14.  Judge Illston discussed in

detail Ms. Coulter's and Dr. Sangani's RFC opinions set forth in a January 16, 2015 letter in

---

[9] The Court declines to consider the Commissioner's argument that the post-DLI evidence is
entitled to less weight because of its date, as that was not a reason given by ALJ Hernandez for
rejecting or discounting the post-DLI opinions.  *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir.
2007) (stating that the court "review[s] only the reasons provided by the ALJ in the disability
determination and may not affirm the ALJ on a ground upon which he did not rely"); Dkt. No. 25,
at 22.

support of T.N.'s application and a February 19, 2015 mental impairment questionnaire.  AR 595-96.  The opinions in the letter and questionnaire suggested marked impairments in T.N.'s ability to work.  AR 595-96.  Judge Illston concluded that the ALJ erred in ignoring Dr. Sangani's opinion, which Judge Illston noted was entitled to controlling weight absent specific and legitimate reasons justifying its rejection pursuant to 20 C.F.R. § 404.1527(c)(2)-(6).  AR 610.

Judge Illston ordered the ALJ on remand to reweigh Dr. Sangani's opinion.  AR 618.  Judge Illston further stated:  "If the ALJ finds that Dr. Sangani's opinion is not controlling, the ALJ shall weigh the opinion by applying the factors listed in 20 C.F.R. § 404.1527(c)(2)-(6).  Any opinions of Dr. Sangani that the ALJ rejects must be specifically identified and rejected with specific and legitimate reasons supported by substantial evidence in the record."  AR 618.

The post-remand records reveal that Dr. Sangani continued treating T.N. for PTSD and major depression through 2016.  *See* AR 1040-51, 1067, 1083, 1102, 1149, 1168, 1174, 1189.  During fall 2016, Dr. Sangani worked closely with T.N. and supervised and prescribed several medication trials in an attempt to treat T.N.'s persistent and severe depression and PTSD with various medications, all of which failed.  AR 1057, 1067, 1083; *see also* AR 1149-51 (noting that T.N.'s symptoms had not changed and that they were "severe and longstanding and are causing impairment in all aspects of her life").

On remand, ALJ Hernandez gave Dr. Sangani's opinion "little weight," concluding that, along with Ms. Coulter, Dr. Sangani "lack[ed] [state agency consultant] Dr. Spivey's superior understanding of the rules and regulations governing Social Security disability adjudications."  AR 504.  ALJ Hernandez further reasoned, without any record citations, that Dr. Sangani's opinion was

> inconsistent with [T.N.'s] demonstrations of normal and nearly normal mental functioning despite initially limited treatment and in the context of sustained treatment, [T.N.'s] statements indicating that she could go out alone and that she went to church, shopped, attended sporting events and graduations, and represented her family at a shower, [T.N.'s] moving in early 2015, and [T.N.'s] noting that she was helping to move her son to college.

AR 504-05.

The relevant legal standards are set forth in detail in Judge Illston's order.  *See* AR 608-09.

1      Like ALJ Laverdure, ALJ Hernandez failed to offer specific and legitimate reasons

2  supported by substantial evidence for rejecting Dr. Sangani's opinion.  At the outset, the Court

3  notes that ALJ Hernandez failed to comply with Judge Illston's order requiring that the ALJ

4  specifically identify the particular opinions from Dr. Sangani that the ALJ rejected.  AR 618.

5  Nevertheless, the Court is able to determine that the operative opinion here is Dr. Sangani's

6  February 2015 RFC opinion, which identifies marked impairments in T.N.'s functioning and

7  provides that T.N. would be unable to complete a workday more than four days per month.  *See*

8  AR 596 (September 2018 order discussing Dr. Sangani's RFC opinion); *see* AR 398-403 (RFC

9  opinion signed by Dr. Sangani and Ms. Coulter).

10      Second, the Court notes that ALJ Hernandez also failed to apply the pertinent factors to her

11 evaluation of Dr. Sangani's opinion as required by 20 C.F.R. § 404.1527(c)(2)-(6) and specifically

12 ordered by Judge Illston.  *See* AR 18.  Instead, ALJ Hernandez appears to have focused

13 exclusively on consistency, ignoring "the length of the treatment relationship and the frequency of

14 examination, the nature and extent of the treatment relationship, supportability, . . .  [and]

15 specialization of the doctor." *Revels v. Berryhill*, 874 F.3d 648, 665 (9th Cir. 2017) (citing 20

16 C.F.R. § 404.1527(c)(2)–(6)).

17      Consideration of the relevant factors indicates that Dr. Sangani's RFC opinion is entitled to

18 controlling weight.  First, Dr. Sangani treated T.N. on a regular basis—at least twelve visits

19 between February 2015 and December 2016.  *See* AR 439, 464, 1040-51, 1067, 1083, 1102, 1149,

20 1168, 1174, 1189.  Second, Dr. Sangani's treatment was extensive, and T.N., who was reluctant to

21 try medication for her mental impairments, allowed Dr. Sangani to attempt three different

22 medication trials in an effort to address her symptoms during 2016.  AR 1149-51, 1057, 1067,

23 1083.  T.N. confided in Dr. Sangani regarding her symptoms, and Dr. Sangani observed

24 repeatedly that T.N. continued to struggle with "low mood, sadness, hopelessness, [and] ongoing

25 thoughts related to [her] job termination in 2008."  AR 1083.  Throughout T.N.'s multiple

26 medication trials, Dr. Sangani observed that T.N.'s mental impairments were unchanged by the

27 medications, that she did not tolerate medications well, and that T.N. felt like "a failure."  AR

28 1083, 1151, 1189.  Dr. Sangani's opinion is supported by her own treatment records and notes,

United States District Court
Northern District of California

9

and she was a psychiatrist, thus demonstrating relevant specialization.  Finally, Dr. Sangani's opinion is consistent with those from the only other treating medical providers of record, psychologists Drs. Marsh and James.  It is also consistent with Ms. Coulter's opinion.

Moreover, the reasons that ALJ Hernandez offered for rejecting Dr. Sangani's opinion are not specific and legitimate; nor are they supported by substantial evidence.  The first reason that ALJ Hernandez gave for rejecting Dr. Sangani's opinion was that she "lack[ed] [state agency consultant] Dr. Spivey's superior understanding of the rules and regulations governing Social Security disability adjudications."  AR 504.  However, "[l]ack of familiarity with [Social Security Administration] SSA guidelines is irrelevant to the validity of a physician's opinion and is not a proper reason for discounting an opinion."  *Sweeney v. Saul*, No. 2:18-CV-02495 KJM AC, 2019 WL 7038374, at *7 (E.D. Cal. Dec. 20, 2019), *report and recommendation adopted*, No. 2:18-CV-02495 KJM AC, 2020 WL 798669 (E.D. Cal. Feb. 18, 2020); *Dipietro v. Colvin*, No. 8:15-CV-01374 (VEB), 2016 WL 3452909, at *9 (C.D. Cal. June 15, 2016) (rejecting as basis for discounting treating physician's opinion that he was "not familiar" with SSA guidelines in part because he was "undoubtedly familiar" with plaintiff).  "Whether or not [a physician] is trained in or even familiar with the Social Security Regulations is irrelevant to the question of whether the ALJ should credit [her] opinion concerning [p]laintiff's limitations and ability to sustain full-time work."  *Valdez–Canez v. Colvin*, No. CV-16-02780-PHX-DGC, 2017 WL 2351664, at *4 (D. Ariz. May 31, 2017).  Here, Dr. Sangani was a licensed psychiatrist who treated T.N. on many occasions over a two-year period, and she was familiar with T.N.  Nothing in the record suggests that Dr. Sangani's lack of familiarity with the Administration's disability guidelines should "cast doubt on her assessment of [T.N.'s] work-related functional limitations and ability to sustain full-time work."  *Emme J. C. v. Saul*, No. EDCV 19-02186 PVC, 2021 WL 3730165, at *10 (C.D. Cal. Mar. 23, 2021) (finding that ALJ erred in rejecting treating physician's opinion because she was "not familiar with the Social Security Administration's precise disability guidelines").

Finally, ALJ Hernandez's determination that Dr. Sangani's opinion is inconsistent with T.N.'s "demonstrations of normal and nearly normal mental functioning" and her activities of daily living is based on a selective view of the evidence and a mischaracterization of the record.

AR 504-05.  ALJ Hernandez selectively highlighted some indicators from T.N.'s visits and mental status examinations while ignoring others, and even these highlighted indicators are not inconsistent with T.N.'s depression and PTSD diagnoses.[10]  *See Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017) (improper for ALJ to "cherry-pick" from medical evidence as opposed to undertaking a "broader development" of the evidence in its entirety).  The Court notes that ALJ Hernandez's finding are similar to those ALJ Laverdure made, which were based on "indicators" from plaintiff's mental status examinations that plaintiff had "a pleasant and cooperative demeanor, logical thought process, normal attention and concentration, and good impulse control, insight, and judgment."  AR 606.  In commenting on ALJ Laverdure's findings, Judge Illston observed:

> [T]he mental status examinations also described [T.N.] varyingly as tearful, with a depressed and sad mood and affect, guarded/hostile, anxious, withdrawn, and terse.  *See, e.g.,* [AR] at 313, 326, 334, 362, 393.  Presenting as "pleasant and cooperative" is not inconsistent with allegations of depression, particularly where, as here, every clinician who treated or examined her diagnosed [T.N.] with depression, PTSD, and/or anxiety disorder.  *See Ghanim* [*v. Colvin*], 763 F.3d [1154], 1164 [(9th Cir. 2014)] ("the treatment records must be viewed in light of the overall diagnostic record"); *see also Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (finding examining expert's diagnoses of major depression, panic disorder, PTSD, and nightmare disorder were not inconsistent with what ALJ characterized as "benign Mental Status Exam" where expert did not call the exam benign and where exams noted claimant "to be tearful and sad, with a monotone and hypophonic voice and psychomotor retardation" and noted "blunted affect and uncontrolled crying").  Essentially, the ALJ discounted [T.N.'s] testimony that she was depressed on the basis of mental status exams by providers who simultaneously diagnosed [T.N.] with clinical depression.  This was error.

AR 606-07.  ALJ Hernandez repeats these same errors in discounting Dr. Sangani's opinion.

In addition, ALJ Hernandez's characterization of T.N.'s activities in 2015, which the ALJ also cited as a reason for rejecting Dr. Sangani's opinion, is not supported by substantial evidence.  The ALJ suggested that T.N.'s church attendance, attendance at sporting events, shopping, and moving her son to college rendered Dr. Sangani's opinion inconsistent and entitled to little weight.

---

[10] The Court notes that ALJ Hernandez failed to provide any record citations in support of these findings.  *See* AR 504.

United States District Court
Northern District of California

United States District Court
Northern District of California

AR 505.  However, T.N.'s regular church attendance was previously addressed by Judge Illston, and this Court agrees that it does not undermine "an overall trend of [T.N.'s] symptoms worsening over time."  AR 605.  Moreover, the longitudinal medical evidence shows that T.N.'s depression and PTSD left her fearful and reluctant to leave her home, and, that as part of her treatment, her therapist consistently worked to "continue supporting any activities [that] involv[ed] leaving the house," including "encourag[ing] her to stay engaged in church."  AR 922.  In spite of those longstanding treatment goals, T.N. remained very resistant to taking her son to sporting events or to attending functions other than church unless it was necessary.  *See* AR 920-21, 947 (T.N. reports that she went to her son's basketball game only because he did not have a ride); AR 932 (T.N. was window-shopping as she worked up the courage with her therapist to leave the home); AR 1065 (noting husband's frustration trying to get T.N. to leave her house).  The activities on which ALJ Hernandez relies appear to have been exceptions in T.N.'s activities of daily life, rather than examples of regular activities.  *See* AR 1093 (therapist noted that T.N. was able to deliver son to college, but found it challenging not being home and able to withdraw); AR 1098 (upon returning home from delivering son to college, T.N. was unable to get up and out of the house).  In sum, that T.N. was able to leave her house occasionally for certain activities does not undermine Dr. Sangani's opinion or the functional limitations contained therein.  "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer."  *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

ALJ Hernandez erred in rejecting Dr. Sangani's opinion for reasons that are not specific or legitimate and that are not supported by substantial evidence.

### 2.      Therapist Coulter

In her prior order, Judge Illston described Ms. Coulter's opinion through November

2015.[11]  AR 595-596.

Judge Illston examined the reasons proffered by ALJ Laverdure for rejecting Ms. Coulter's opinion and held that his decision to assign "little weight" to her opinion was not supported by substantial evidence.  AR 611-614.  Judge Illston held that ALJ Laverdure's reasons were not "germane" and/or were legally insufficient for four main reasons.  First, Judge Illston held that the ALJ erred in rejecting Ms. Coulter's opinion based on the proximity of the treatment date to T.N.'s DLI, December 31, 2014.  AR 611.  Second, Judge Illston held that the ALJ erred in disregarding opinions in treatment records post-dating T.N.'s DLI.  AR 612.  Third, Judge Illston held that the ALJ erred in discounting Ms. Coulter's opinion because T.N. "sounded less depressed" at certain appointments and was not suicidal, noting that the fact that T.N. occasionally showed improvement did "not provide grounds for discounting [her therapist's] opinion where the treatment notes for those encounters diagnosed [T.N.] with major depression and PTSD, noted that [T.N.] feels like a failure, was unable to talk about her termination from six years prior 'without crying and feeling overwhelmed' and reported anger, humiliation and shame." AR 613 (citing AR 411-14).  Finally, Judge Illston held that it was error for the ALJ to discount Ms. Coulter's opinion based on GAF scores she assigned on certain occasions.[12]  AR 613.

T.N. submitted post-remand records demonstrating that she continued near-weekly

---

[11] As detailed by Judge Illston, Ms. Coulter submitted both a January 2015 letter in support of T.N.'s DIB application and a February 2015 mental impairment questionnaire.  AR 595-96 (discussing AR 397-98).  The February 2015 questionnaire constituted a "medical opinion" as defined by the regulations then in effect.  AR 397; see also 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").  The January 2015 letter likely constituted a "medical opinion" as well, but the Court need not adjudicate the issue, which neither party has raised, because it concludes that, even if the letter constituted "other medical evidence," T.N. nevertheless is entitled to relief on this claim.  AR 398; see also 20 C.F.R § 404.1513(a)(3).

[12] The GAF is a scale "ranging from zero to 100, used to rate social, occupational and psychological functioning on a hypothetical continuum of mental health."  Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Court § 5:30 (Feb. 2022).  It is a subjective rating of an individual's overall psychological functioning, which may assist an ALJ in assessing a claimant's mental RFC.  Id.  While a GAF score may help an ALJ assess mental residual functional capacity, it is not raw medical data.  Id.  Under the GAF scale, a score of 51 to 60 indicates "moderate difficulty in functioning."  Id.  (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (Fourth ed. rev'd 2000)).

United States District Court
Northern District of California

appointments with therapist Coulter on a regular basis from late 2014 through January 2018, when therapist Coulter left her position.  AR 917-1342.  During those three-plus years, Ms. Coulter treated T.N. for depression, anxiety, and PTSD.  T.N. regularly recounted the trauma of her job termination in 2008, and she often experienced great difficulty leaving her home and interacting with others face-to-face.  *See* AR 917, 922, 955, 1225, 1221.  Although T.N. denied suicidal ideations, she admitted on several occasions that if not for her family, she would "give up," or that she "[w]ished God would just take her," and she frequently lacked any desire to do anything, including on her birthday.  *See* AR 924, 973-74, 1025, 1067.  She lamented that she had been suffering from the depression and PTSD symptoms for so long (eight years), and often expressed that she did not know whether things would "ever get better."  AR 1115.  Throughout the years of treatment, therapist Coulter noted that T.N. "struggle[d] with feelings of worthlessness, of failure, of drowning and no one can see."  AR 1221; *see also* AR 1189, 1183.  In late 2015, Ms. Coulter noted that T.N. was experiencing more somatic symptoms as well, including after she unsuccessfully attempted a job interview and after she had to go through security at an airport to attend a family member's funeral.  AR 1110, 1118.

On remand, ALJ Hernandez rejected Ms. Coulter's opinion for the same reasons she rejected Dr. Sangani's opinion.  AR 504-05.

The relevant legal standards for evaluating Ms. Coulter's opinion are set forth in Judge Illston's prior order.  *See* AR 608-09.  Additionally, the Court notes that even though Ms. Coulter, a licensed clinical social worker, is not considered an "acceptable medical source" under the Social Security regulations, her opinion was "important and should [have been] evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."[13]  Social Security Ruling ("SSR") 06-03, *Titles II and XVI: Considering Opinions and*

---

[13] Under the regulations that apply to this case, a licensed clinical social worker was considered an "other" medical source.  20 C.F.R. § 404.1513(d) & (d)(1) (eff. Sept. 3, 2013 to March 26, 2017) (noting that "[o]ther sources include, but are not limited to . . . [m]edical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists)"); *see also* SSR 06-03, 2006 WL 2329939, at *2 (explicitly noting that "licensed clinical social workers" constitute "[m]edical sources who are not 'acceptable medical sources'").  For claims filed after March 27, 2017, the SSA has ceased to distinguish between an "acceptable medical source" and an "other medical source." 20 C.F.R.

United States District Court
Northern District of California

United States District Court
Northern District of California

*Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims*, 2006 WL 2329939, at *3 (2006); *see also Garrison*, 759 F.3d at 1013-14 (other sources "can provide evidence about the severity of a claimant's impairment(s) and how it affects the claimant's ability to work"). "The same factors used to evaluate the opinions of medical providers who are acceptable medical sources are used to evaluate the opinions of those who are not." *Revels,* 874 F.3d at 655. "Those factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the doctor." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)–(6)).

Again, as with Dr. Sangani, ALJ Hernandez failed to apply the pertinent factors to the evaluation of Ms. Coulter's opinion, focusing exclusively on consistency, and ignoring "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, . . . [and] specialization of the doctor." *Id.* ALJ Hernandez's determination that Ms. Coulter's opinion should be given "little weight" is not supported by substantial evidence. With respect to the length of treatment, Ms. Coulter had more direct treatment experience with T.N. than any other medical provider. Ms. Coulter met with T.N. on a weekly basis for more than three years. When T.N. was unavailable to attend sessions in-person, due to her symptoms or otherwise, Ms. Coulter conducted the sessions by telephone. *See, e.g.,* AR 917 (noting that goal was for a face-to-face session with T.N., but that T.N. had found herself generally unable to leave the house that week). The progress notes indicate that T.N. trusted Ms. Coulter, and that Ms. Coulter played a large role in encouraging and supporting T.N. during several months of medication trials. AR 1025, 1034, 1038.

Ms. Coulter's opinion and the assessments therein are also well-supported by relevant evidence, including concurrent observation of T.N.'s lived experiences over a period of three-plus years. Additionally, Ms. Coulter's opinion is consistent with the opinions from the only other treating medical providers of record, Drs. Sangani, Marsh, and James. And, finally, Ms. Coulter's experience as a licensed clinical social worker meant that she possessed specialized training and

_____

§ 404.1520c.

15

knowledge in treating T.N.'s mental impairments and their symptoms.

Even though Ms. Coulter was not considered "an acceptable medical source," given the above, 20 C.F.R. § 416.927(f)(1) strongly suggests that her opinion was entitled to more weight than those of state agency examining psychologist Dr. Spivey and state agency consulting psychologists Drs. Koretzky and Covey.  That regulation provides that:

> an opinion from a medical source who is not an acceptable medical source . . . may outweigh the medical opinion of a medical source who is an acceptable medical source . . . if he or she has seen the individual more often . . . , has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.

20 C.F.R. § 416.927(f)(1).

### 3.    State Agency Examiner and Consultants

As for the state agency opinions, Judge Illston described state agency examiner Dr. Spivey's opinion and the opinions of consulting psychologists Drs. Koretzky and Covey, and there have been no changes or updates to those opinions since Judge Illston's September 2018 decision.  AR 597-98.

Judge Illston held that ALJ Laverdure erred in giving "significant weight" to consultative examiner Dr. Spivey's less restrictive RFC opinion based solely on the observation that Dr. Spivey's limitations were "generally consistent with the treatment records" and were "consistent with [T.N.'s] residual functional capacity assessment."  AR 614.  Judge Illston reasoned that ALJ Laverdure utilized a "backward approach" to weighing Dr. Spivey's opinion because the ALJ was required to first evaluate the medical evidence and to then determine the RFC.  AR 614.

Judge Illston further held that ALJ Laverdure erred in giving the opinions of consulting Drs. Koretzky and Covey "some weight," which was more weight than that the ALJ gave the opinions of T.N.'s treating providers.  AR 614.  Judge Illston concluded that the ALJ's reasons were not supported by substantial evidence, suggesting that ALJ Laverdure's "reli[ance] in part on consistency with the treatment records as a reason to favor the non-examining doctor opinions" made little sense where the ALJ simultaneously "discounted the conclusions that the treating providers themselves reached."  AR 615.  Judge Illston further found that Drs. Koretzky's and

16

Covey's less restrictive interaction limitation—permitting T.N. to have "superficial" interaction with co-workers and "infrequent" interaction with the public—was not supported by substantial evidence in the record, especially when T.N.'s treating providers opined that her "hostile demeanor" rendered her "seriously limited" in her ability to get along with peers and unable to interact with the public.  AR 615.

On remand, ALJ Hernandez again gave Dr. Spivey's opinion "significant weight" for the same reasons that she advanced in support of rejecting the opinions of T.N.'s treating doctors and therapists.  AR 504.  First, ALJ Hernandez reasoned that "[a]s a state-contracted medical consultant, [Dr. Spivey] has a superior understanding of the rules and regulations governing Social Security disability adjudications."  AR 504.  Second, the ALJ reasoned that even though Dr. Spivey "did not identify specific functional limitations, her general determination that [T.N.] is not precluded from performing basic mental work activities is consistent with [T.N.'s] demonstrations of normal and nearly normal mental functioning."  AR 504.  ALJ Hernandez then noted the same reasons, again without record citations, that she noted in support of her rejection of Dr. Sangani's and Ms. Coulter's opinions.  AR 504.

ALJ Hernandez gave "substantial weight" to Drs. Koretzky's and Covey's opinions.  AR 504.  In support, ALJ Hernandez noted that their opinions that T.N. "is not precluded from performing basic mental work activities were consistent with Dr. Spivey's opinion."  AR 504.

As discussed in detail above regarding treating psychiatrist Dr. Sangani's opinion, the reasons cited by ALJ Hernandez for giving greater weight to the opinion of Dr. Spivey—Dr. Spivey's familiarity with Social Security rules and regulations and T.N.'s alleged "normal and near normal mental functioning"—are not germane reasons for rejecting Dr. Sangani's or Ms. Coulter's opinions; nor are they supported by substantial evidence.  AR 504.  Nor is the sole reason cited by ALJ Hernandez regarding Drs. Koretzky's and Covey's opinions a germane reason for rejecting Dr. Sangani's or Ms. Coulter's opinions.  AR 504.  In essence, ALJ Hernandez gave greater weight to the state consultants' opinions simply because they were consistent with Dr. Spivey's opinion.  AR 504.  Given that the ALJ erred in affording greater weight to Dr. Spivey's opinion than those of Dr. Sangani and therapist Coulter, she likewise erred in affording greater

weight to the consultants' opinions.

Consideration of the relevant factors and ALJ Hernandez's proffered reasons confirms that ALJ Hernandez's determinations that Ms. Coulter's opinion was entitled to "little weight," while the opinions of Dr. Spivey and Drs. Koretzky and Covey were entitled to "significant" and "substantial" weight, respectively, are not supported by substantial evidence. *See Revels,* 874 F.3d at 655 (discussing relevant factors at 20 C.F.R. § 404.1527(c)(2)–(6)); *see also Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) (noting that the ALJ's decision to disregard nurse practitioner testimony "makes little sense" given that the nurse was the claimant's regular primary care medical provider for more than two years and no other medical professional in the record actually treated the claimant).

### 4. Drs. Marsh and James

As noted, the post-remand medical evidence included additional opinions from treating psychologists Drs. Marsh and James.  AR 1348-52 (Dr. Marsh); AR 1354-55 (Dr. James).[14]

In her June 2020 psychological assessment, Dr. Marsh noted that she had been treating T.N. since March 2020 and diagnosed major depressive disorder, anxiety, and PTSD.  AR 1348-49.  She opined that T.N.'s mental impairments rendered her "incapable of sustaining continued focus for long periods of time" and that they "interfere with her day-to-day activities [and] keep[]

---

[14] Treating therapist, Ms. Matsumoto, LCSW, and examining therapist, Ms. Wiseman-Kelly, LCSW, also submitted medical records following remand.  AR 1347 (Ms. Matsumoto); AR 1353 (Ms. Wiseman-Kelly).  Therapist Matsumoto, who works for the Kaiser Permanente psychiatry department in Antioch, California, verified that she was treating T.N. for symptoms of PTSD "which [T.N.] related to being fired from her job over ten years ago."  AR 1347.  Ms. Matsumoto documented more than fifty visits for T.N. from January 2018 through December 2019.  AR 1347.

Therapist Wiseman-Kelly, LCSW, submitted a July 13, 2020 letter noting that she had seen T.N. twice for psychotherapy more than ten years ago, but that they had to discontinue therapy because it was not covered by T.N.'s insurance plan.  AR 1353.  Ms. Wiseman-Kelly stated that T.N. suffered from generalized anxiety disorder and major depressive disorder.  AR 1353.

The Court agrees with ALJ Hernandez that neither Ms. Matsumoto nor Ms. Wiseman-Kelly submitted "opinions" as defined by 20 C.F.R. § 404.1527(a)(1).  AR 505.  Neither letter included descriptions of any functional limitations caused by T.N.'s identified mental impairments.  *See Kaminski v. Kijakazi*, 856 F. App'x 735, 736 (9th Cir. 2021) (concluding that psychiatrist's treatment notes did not constitute a "medical opinion" where they failed to address "the severity of [the claimant's] mental impairments or any functional limitations that those impairments caused").

United States District Court
Northern District of California

her stuck and numb," with "irritability, low energy, poor concentration, and sadness."  AR 1349.

Dr. James, another psychologist working with Dr. Marsh, offered an additional assessment based

on her "bi-weekly sessions" with T.N.  AR 1354.  Dr. James confirmed T.N.'s symptoms as

described by Dr. Marsh, and similarly opined that the symptoms interfered with T.N.'s day-to-day

functioning, ultimately concluding that T.N. was "not emotionally equipped to enter any

employment workforce at this time."  AR 1354.

AlJ Hernandez afforded Drs. Marsh's and James's opinions "little weight," reasoning that

they opined on T.N.'s ultimate ability to work—an issue reserved to the Commissioner.  AR 505.

As with Dr. Sangani and Ms. Coulter, ALJ Hernandez also reasoned that Drs. James and Marsh

"lack[ed] Dr. Spivey's superior understanding" of the Social Security regulations, and that their

opinions were inconsistent with the record evidence for the same reasons cited in support of the

ALJ's rejection of Dr. Sangani's and Ms. Coulter's opinions.  AR 505.

It is true that the question whether one is disabled is a legal question that may turn on non-

medical factors and is thus reserved for the Commissioner.  *See* 20 C.F.R. § 404.1527(d); *see also*

*McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (explaining that a physician's opinion about

ability to do work "may be useful or suggestive of useful information," but "[t]he law reserves the

disability determination to the Commissioner" because it is not based solely on medical factors but

also relates to "education, age, technological, economic, and social factors").  However, here, both

Dr. Marsh's and Dr. James's opinions about T.N.'s ability to work were premised on their

assessments of T.N.'s mental impairments, symptoms, and resulting functional limitations, a valid

subject of medical expertise which is entitled to deference.  *See, e.g., Hill v. Astrue*, 698 F.3d

1153, 1159 (9th Cir. 2012) (ALJ erred in ignoring and failing to discuss medical opinion where

opinion was "not a conclusory statement" about ability to work but rather "an assessment, based

on objective medical evidence"); *Popa*, 872 F.3d at 906 (ALJ erred by discounting physician's

testimony that claimant was "not likely to maintain regular [work] attendance").  Dr. Marsh's

opinion that T.N. is "incapable of sustaining continued focus" or "maintaining prolonged contact

with others within a workplace setting," describes legitimate functional limitations—as opposed to

ultimate determinations.  AR 1349-50.  Moreover, Dr. James's opinion that T.N. is "not

United States District Court
Northern District of California

1    emotionally equipped to enter any employment workforce at this time," was based on her medical

2    prognosis in light of the treatment history, and that prognosis was entitled to weight by ALJ

3    Hernandez.  AR 1354.

4         ALJ Hernandez's two additional reasons for rejecting the treating opinions of Drs. Marsh

5    and James were neither "specific and legitimate;" nor were they supported by substantial evidence

6    for the same reasons set forth above regarding Drs. Sangani and Ms. Coulter.

7                                              * * *

8         In sum, treating physician Dr. Sangani's RFC opinion was entitled to controlling weight.

9    Additionally, therapist Coulter's RFC opinion was likewise entitled to greater weight than the ALJ

10   gave it, while significant and substantial weights she gave to the opinions of the state agency

11   examining and consulting physicians were not supported by substantial evidence.  Both Dr.

12   Sangani's and therapist Coulter's RFC opinions were supported by and consistent with record,

13   including the post-remand opinions of treating psychologists Drs. Marsh and James, whose

14   opinions ALJ Hernandez erroneously rejected.

15        Because the Court concludes that Dr. Sangani's RFC opinion is entitled to controlling

16   weight, and given ALJ Hernandez's failure to articulate specific and legitimate reasons for

17   rejecting her opinion, the Court determines that remand for an award of benefits is appropriate as

18   discussed below.  Given this result, the Court declines to reach the additional issue regarding

19   T.N.'s symptom testimony.

20        **B.      ALJ's Determination of T.N.'s RFC and Step Five Analysis**

21        T.N. argues that the ALJ failed to properly assess her RFC, having improperly rejected or

22   discounted the treating medical opinions, and that the ALJ erred at step five because she relied on

23   a vocational expert ("VE") hypothetical that employed an RFC that was not supported by

24   substantial evidence.  The Court agrees.

25        An ALJ assesses a claimant's RFC "based on all the relevant evidence in [the] case

26   record."  20 C.F.R. § 416.945(a)(1).  Here, having improperly rejected or discounted the treating

27   medical opinions, the RFC that ALJ Hernandez assessed was not supported by substantial

28   evidence, and did not account for all of T.N.'s functional limitations.  *See Valentine v. Comm'r*

United States District Court
Northern District of California

1    *Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a

2    claimant's limitations is defective."). Had ALJ Hernandez given proper weight to Dr. Sangani's

3    and Ms. Coulter's RFC opinion, and the functional limitations therein, which were further

4    supported by the post-remand opinions from treating psychologists, Drs. Marsh and James, T.N.'s

5    RFC would have appropriately contained additional, more restrictive functional limitations.

6            Both Dr. Sangani and Ms. Coulter opined that T.N. was unable to meet competitive

7    standards as a result of her depression, anxiety, and PTSD in the following areas:  her ability to

8    (1) maintain regular attendance and be punctual; (2) complete a normal workday and workweek

9    without interruptions from psychologically-based symptoms; (3) accept instructions and respond

10   appropriately to criticism from instructors; (4) deal with the stress of semiskilled and skilled work;

11   (5) interact appropriately with the general public; and (6) maintain socially appropriate behavior.

12   AR 400-401.  Dr. Sangani and Ms. Coulter further noted that T.N. possessed marked limitations in

13   her abilities to complete activities of daily living and to maintain social functioning.  AR 402.

14   Finally, Dr. Sangani and Ms. Coulter estimated that T.N. would miss or be unable to complete a

15   workday more than four days a month.  AR 403.  ALJ Hernandez's RFC assessment was not

16   supported by substantial evidence because it did not account for these limitations.

17           Additionally, ALJ Hernandez's step five determination regarding the work that T.N. could

18   perform likewise was not supported by substantial evidence.  The ALJ made her step five

19   determination based on a defective VE hypothetical that did not include the appropriate RFC and

20   limitations.  *See* AR 548-49, 506-07; *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (An

21   ALJ may meet their step five burden by propounding to a vocational expert a hypothetical based

22   on medical assumptions supported by substantial evidence in the record.); *Tackett v. Apfel*, 180

23   F.3d 1094, 1101 (9th Cir. 1999) (ALJ's depiction of the claimant's impairments must be

24   "accurate, detailed, and supported by the medical record"); *accord Valentine*, 574 F.3d at 690.  At

25   the July 2020 hearing before ALJ Hernandez, the VE testified in response to alternative

26   hypotheticals that the restrictive limitations opined to by Dr. Sangani and Ms. Coulter would

27   preclude any competitive employment.  *See* AR 47-48, 549-54.  ALJ Hernandez, however, made

28   her step five determination based on a different VE hypothetical that did not include those

United States District Court
Northern District of California

1  limitations, and, for all the reasons above, erred in doing so.

2  **IV.    DISPOSITION**

3          "A district court may affirm, modify, or reverse a decision by the Commissioner 'with or

4  without remanding the cause for a rehearing.'" *Garrison*, 759 F.3d at 1019 (quoting 42 U.S.C.

5  § 405(g)) (emphasis omitted). "If additional proceedings can remedy defects in the original

6  administrative proceeding, a social security case should be remanded." *Lewin v. Schweiker*, 654

7  F.2d 631, 635 (9th Cir. 1981).  On the other hand, the court may remand for award of benefits

8  under the "credit as true" rule where: (1) "the ALJ failed to provide legally sufficient reasons for

9  rejecting evidence, whether claimant testimony or medical opinion;" (2) "there are [no]

10  outstanding issues that must be resolved before a disability determination can be made" and

11  "further administrative proceedings would [not] be useful;" and (3) "on the record taken as a

12  whole, there is no doubt as to disability." *Leon v. Berryhill*, 880 F.3d 1041,1045 (9th Cir. 2017)

13  (citations and internal quotation marks omitted); *see also Garrison*, 759 F.3d at 1021 (holding that

14  a district court abused its discretion in declining to apply the "credit-as-true" rule to an appropriate

15  case).  The "credit-as-true" rule does not apply "when the record as a whole creates serious doubt

16  as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act,"

17  *Garrison*, 759 F.3d at 1021, or when "there is a need to resolve conflicts and ambiguities."

18  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

19          While applying the "credit-as-true" rule here, the Court acknowledges that the Ninth

20  Circuit recently noted the SSA's concerns regarding the rule.  *See Woods v. Kijakazi,* 32 F.4th

21  785, 791 (9th Cir. 2022) (discussing Revisions to Rules Regarding the Evaluation of Medical

22  Evidence ("Revisions"), 81 Fed. Reg. at 62,573 (noting that "[a]pplication of the credit-as-true

23  rule prevents [the agency] from reconsidering the evidence in the record as a whole and correcting

24  any errors that may exist, effectively supplanting the judgment of our decision makers")).  The

25  Court nevertheless applies the "credit-as-true" rule here for several reasons.  First, the *Woods*

26  Court did not directly rule on the issue, and the "credit-as-true" rule remains controlling precedent

27  in the Ninth Circuit.  *See* 32 F.4th at 787, 792 (concluding that the new regulations "displace [the

28  Ninth Circuit's] longstanding case law" requiring an ALJ to articulate "specific and legitimate

reasons" for rejecting a treating physician's opinion where the opinion is contradicted by other medical opinions).  Second, as noted above, because T.N.'s claims were filed before March 27, 2017, the Court applies the rules then in effect, which clearly afforded more weight to treating physicians and supported the Ninth Circuit's credit-as-true rule.  *See* 20 C.F.R. §§ 404.1527, 416.927.  Finally, the facts of this particular case do not give rise to the concerns expressed by the agency regarding the effect of application of the credit-as-true rule.  The SSA's judgment is hardly "supplanted" here given the fact that two separate ALJs have had the opportunity to consider and weigh the opinions of Dr. Sangani and therapist Coulter.  *See* 81 Fed. Reg. at 62,573.

An award of benefits is therefore warranted in this case for the period from T.N.'s amended onset date of October 1, 2012, through her DLI.[15]  First, for the reasons set forth above, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Sangani's and therapist Coulter's RFC opinions.  Second, "there are [no] outstanding issues that must be resolved before a disability determination can be made" and "further administrative proceedings would [not] be useful."  *Garrison*, 759 F.3d at 1021.  The record supports an RFC assessment commensurate with the limitations stated by Dr. Sangani and therapist Coulter.  At both ALJ hearings, the VE testified that those functional limitations would "eliminate competitive employment."  *See* AR 47-48, 549-54.

Finally, "on the record taken as a whole, there is no doubt as to disability."  *Garrison*, 759 F.3d at 1021.  ALJ Hernandez's inability to articulate "specific and legitimate reasons" for rejecting the opinions of Dr. Sangani and therapist Coulter at a second and subsequent round of administrative proceedings further supports the Court's conclusion that the longitudinal record raises no serious doubts as to T.N.'s disability.

Carefully considering the record as a whole, the Court has no "serious doubt" that T.N. was in fact disabled during the relevant period.  *See id.*; *see also Revels*, 874 F.3d at 668 n.8

---

[15] For the reasons discussed above, the Court rejects the Commissioner's related argument that because the opinions of the treating providers were provided following [T.N.'s] DLI, they are entitled to less weight in assessing whether remand for an award of benefits is warranted.  *See* Dkt. No. 25 at 22.  The post-DLI opinions were properly treated as relevant by ALJ Hernandez because they address the same chronic depression, anxiety, and PTSD that existed and were documented prior to T.N.'s DLI.

United States District Court
Northern District of California

(explaining that where each of the credit-as-true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled"). Accordingly, the Court exercises its discretion and credits the erroneously discredited opinions as true and remands this case for an immediate calculation and payment of benefits.

## V.      CONCLUSION

Based on the foregoing, T.N.'s motion for summary judgment is granted, the Commissioner's motion for summary judgment is denied, and this matter is remanded for an immediate calculation and award of benefits.  The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: June 21, 2022

VIRGINIA K. DEMARCHI
United States Magistrate Judge